507 A.2d 922

Martin Dale Preston, Petitioner *v.* Workmen's Compensation Appeal Board (Department of Transportation), Respondents.

Argued March 14, 1986, before Judge CRAIG, and Senior Judges BLATT and KALISH, sitting as a panel of three.

*Paul D. Shafer, Jr., Shafer, Dornhaffer, Swick, Bailey & Irwin,* for petitioner.

*Gary D. Ludin,* with him, *Paul J. Duffalo,* Assistant Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, April 15, 1986:

Martin Dale Preston appeals from an order of the Workmen's Compensation Appeal Board which affirmed a referee's decision dismissing Preston's petition for reinstatement. We reverse and remand.

Preston was employed by the Department of Transportation as a maintenance manager. On January 2, 1981, Preston filed a claim petition alleging an aggravation of his hypertension condition, and that the aggravation was related to the stress of his employment. After a

hearing, a referee found that Preston's hypertension was aggravated by the stress of his employment, and awarded total disability benefits from January 3, 1981 to March 5, 1981. Neither party appealed from the referee's decision.

After the benefits period under that award had expired, claimant Preston filed a petition for reinstatement of total disability benefits for the period of August 28, 1981 through December 31, 1981, alleging a recurrence of the aggravation of his hypertension. After a hearing, a referee found that Preston's disability was not related to his employment. The board affirmed and this appeal followed.

Preston contends that the decision is in error because the referee is precluded by collateral estoppel from rejecting the causative factor that he found in the earlier case.

This court, in *Tanski v. Workmen's Compensation Appeal Board,* 95 Pa. Commonwealth Ct. 556, 505 A.2d 1370 (1986), acknowledged that where a referee had found that an injury was work-related, he was precluded from later finding that the original injury was not work-related. The issue in *Tanski,* as in this case, was whether there had been a recurrence of the original injury.[1] In *Tanski,* according to the referee's findings, the original injury was an episode of mental stress, which was disabling; the findings in that case did not

---

[1] On a reinstatement petition filed to restore the effectiveness of an award after the expiration of physical disability status, the claimant has the burden of establishing that the disability has increased or recurred after the date of the previous award, and, to meet this burden, must show that his or her physical condition has actually changed in some manner. *Memorial Osteopathic Hospital v. Workmen's Compensation Appeal Board (Brandon, a/k/a Williams et al.),* 77 Pa. Commonwealth Ct. 518, 466 A.2d 741 (1983).

identify any antecedent condition or predisposition out of which the disabling injury arose. In the present case, by contrast, the referee's Finding of Fact No. 1 refers back to the original injury by stating that the

> Referee found that the claimant's hypertension was aggravated by his employment....

Thus that finding clearly establishes that the claimant suffered from an antecedent condition of hypertension, and that the precise nature of the original injury was an *aggravation* of that condition.

The facts in this case are also distinguishable from those in *Cambria County Commissioners v. Workmen's Compensation Appeal Board,* 57 Pa. Commonwealth Ct. 409, 426 A.2d 249 (1981) where the original injury was a herniated disk back injury suffered in the course of employment. There, when the' claimant later stumbled while walking, entirely apart from his employment, that non-job related stumbling triggered a conpensable recurrence of the underlying back injury condition, itself attributable to causes on the job.

Thus, in deciding whether or not there has been a compensable "recurrence" of an injury, the court must recognize at least three possible alternative factual situations:

> 1. An original injury resulting from the job, which neither stems from, nor initiates, an underlying medical condition, so that a subsequent injury, although similar in nature, can be factually disassociated from the original injury and attributed to a new origin. *Tanski;*

> 2. A job-related injury which initiates a continuing medical condition, such as a back injury, constituting the foundation for a recurrence of disability, triggered by an event unrelated to the job. *Cambria County Commissioners;* and

job injury, so that the original injury consists of an aggravation of that condition, such as the aggravation of hypertension in this case.

In the third category — which is this case — testimony concerning the antecedent causation of the underlying condition obviously is not conclusive with respect to identifying a compensable recurrence.

Here, the referee's Findings Nos. 5 and 6 reveal that the referee may have focused on the cause of the antecedent underlying condition, rather than upon whether there had been a recurrence of the original (aggravation) injury. Those findings read:

(5) The Defendant presented the testimony of Charles A. Joy, M.D., Board certified in internal medicine. Dr. Joy examined the Claimant on February 21, 1983. He was of the opinion that the Claimant's *condition* was not caused by his employment. *Your Referee accepts his testimony as fact.*

(6) Taking into consideration all the testimony in the record, including the Claimant's, your Referee finds that the period of disability claimed by Claimant was not caused or related to his employment. (emphasis supplied.)

Dr. Joy testified concerning claimant Preston's "condition" as follows:

Q. Now, Doctor, can you say with a reasonable degree of medical certainty whether or not Mr. Preston's condition was caused by his work?

A. I can say that I would say that it was not.

Examination of the context of that testimony clearly establishes that the "condition" referred to was the underlying hypertension or high blood pressure condition itself, not the aggravation. The doctor testified that his tests and diagnosis "showed a condition that was consis-

tent with high blood pressure and hardening of the arteries." He then testified concerning the *causes* for *high blood pressure and hardening of the arteries.* He listed "an unknown kidney condition," and with respect to "hypertension" in particular, he referred to "some kidney condition which has happened in the past and left scar tissue...." He attributed hardening of the arteries to a number of factors, including "a family history of it," as well as being overweight and smoking cigarettes.

Thus, that part of Dr. Joy's testimony related to the cause of the pre-existing, underlying condition, without any reference to the occurrence of any new aggravation — the claimed recurrence which was at issue. In fact, another portion of his testimony was directed to the matter of recurrence, rather than to the antecedent condition, and that portion of the testimony went as follows:

Q. Now, Doctor, when Martin went back to work in August — until August of 1981, do you know what capacity of what kind of work he was doing?

A. No, I don't.

Q. Do you know what brought on the additional problem in August of '81?

A. I think it was more stress at work.

Q. Okay, now, did you discuss with him the particulars of any stress as to what specifically it included?

A. (No response.)

Q. Doctor, if I told you that in August of 1981, Mr. Preston was assigned to another location which required him traveling 65 miles one way, would that in itself cause a stress problem?

A. Yes.

Because the referee's first finding makes it clear that an antecedent condition of hypertension was given, which existed before the occurrence of the original aggravation

injury, it was not correct to decide this case on the basis of medical testimony which related only to the causation of that antecedent condition. As to the claim period now involved, given that the claimant has been a hypertensive all along, the question for decision is whether there has been a recurrence in the sense of another aggravation of that pre-existing hypertension condition.

A remand order is necessary, solely for new findings by the referee, without the taking of any further evidence.

## ORDER

NOW, April 15, 1986, the order of the Workmen's Compensation Appeal Board, No. A-86727, dated September 24, 1984, is vacated and this case is remanded for new and additional findings, as to whether or not there was any recurrence of the original injury in the sense of an aggravation of the claimant's hypertension which had existed even before the original injury. No further taking of evidence is authorized by this remand.

Jurisdiction relinquished.